# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

    v.                                                                             Case No. 11-CV-777

**REXNORD INDUSTRIES, LLC,**

    Defendant.

## DECISION AND ORDER ON PLAINTIFF'S MOTION TO QUASH NON-PARTY SUBPOENAS AND FOR PROTECTIVE ORDER

This matter comes before the Court on the motion of the plaintiff, Equal Employment Opportunity Commission ("EEOC"), to quash five subpoenas issued by the defendant, Rexnord Industries, Inc. ("Rexnord") to former employers of Danielle M. Sullivan ("Sullivan") and for a protective order barring Rexnord from subpoenaing Sullivan's current employer. (Pl.'s Br. at 1, Docket # 14.) The parties have briefed the motion and the motion is now ready for disposition. For the reasons stated below, the plaintiff's motion to quash non-party subpoenas will be granted in part and denied in part. Plaintiff's motion for a protective order will be denied.

## FACTUAL BACKGROUND

On August 18, 2011, the EEOC filed its Complaint in this case, alleging that Rexnord fired Sullivan either because of her disability (migraines) or because it regarded her as disabled (by a seizure disorder). (Complaint ¶ 9, Docket # 1.) In November 2011, Rexnord served on the EEOC interrogatories requesting all employment Sullivan held since Rexnord terminated her employment, all employers with which Sullivan applied since Rexnord terminated her employment, and all income

Sullivan received since Rexnord terminated her employment, including its sources. (Declaration of Cesar J. del Peral ("del Peral Decl.") ¶ 4, Docket # 15; Amended Declaration of Steven A. Nigh ("Nigh Decl.) ¶ 4; Docket # 22.) Rexnord also served document requests asking for documents concerning: Sullivan's efforts to find a job after her termination with Rexnord; her efforts to mitigate any loss of income or benefits; her pay and benefits available to her after termination with Rexnord; and her work at three specific employers. (del Peral Decl. ¶ 6; Nigh Decl. ¶ 5.) The EEOC responded in December 2011 to the interrogatories and document requests. (del Peral Decl. ¶¶ 5, 8.) In its interrogatory responses, the EEOC identified three employers for which Sullivan worked after her termination with Rexnord and one employer to which Sullivan applied. (*Id.* ¶ 5.)

On March 21, 2012, the EEOC's attorney received by e-mail a "Notice of Subpoenas Duces Tecum" from Rexnord's counsel, for subpoenas on four employer for whom Sullivan worked after her termination with Rexnord (Aerotek Staffing, Cooper Power Systems, David J. Frank Landscaping Contractors[1], and Nissen Staffing Continuum) and one employer to which Sullivan applied after her termination with Rexnord (Site Staffing, Inc.). (del Peral Decl. ¶ 9 and Exs. I-M; Nigh Decl. ¶ 6.) The notice did not include copies of the subpoenas. (del Peral Decl. ¶ 9.) However, approximately twenty minutes later, counsel for the EEOC received by e-mail from Rexnord's counsel copies of the five subpoenas. (del Peral Decl. ¶ 9; Nigh Decl. ¶ 7.) The subpoenas sought production of documents by April 4, 2012. (del Peral Decl. ¶ 9.)

Each subpoena asked for the following:

Any record or document, including any electronic records or logs, relating to the employment or application for employment of Danielle M. Sullivan with your

---

[1] The EEOC did not identify David J. Frank Landscaping in its interrogatory responses. Rather, Rexnord was aware of this employer through Sullivan's previous disclosures to the EEOC investigator, as reflected in the EEOC's case file. (Def.'s Resp. Br. at 5, Docket # 17.)

> organization. This request includes but is not limited to the complete contents of any personnel, supervisor, payroll, benefits, or medical file. This request further includes, but is not limited to, any application for employment, interview notes, employment offer, correspondence, resume, full payroll history, disciplinary records, supervisor or investigatory notes, internal or external complaints or grievances, resignation letter, letter of termination, employee benefits information, employee leave information, medical records, and documents relating to any pre-employment or post-employment physical. Please also provide a copy of any employee handbook, summary of employee benefits, or summary plan descriptions that were in effect during Sullivan's employment or application for employment with your organization.

(*Id.*)

On March 22, 2012, counsel for the EEOC sent a message by e-mail to Rexnord's counsel notifying her that the EEOC objected to Rexnord's subpoenas as violative of Fed. R. Civ. P. 45(b)(1). (del Peral Decl. ¶ 11; Nigh Decl. ¶ 8.) On March 23, 2012, EEOC's counsel sent a follow-up e-mail, to which Rexnord's counsel responded, agreeing to schedule a time to discuss the EEOC's concerns about the subpoenas. (del Peral Decl. ¶¶ 12-13; Nigh Decl. ¶¶ 9-10.) On March 29, 2012, counsel for the EEOC and Rexnord held a telephone conference regarding the subpoenas. (del Peral Decl. ¶ 14; Nigh Decl. ¶ 14.) Counsel then exchanged letters describing their respective understanding of the conversation. (del Peral Decl. ¶¶ 14, 17, 18; Nigh Decl. ¶ 15.)

The EEOC requested a two week extension to object to Rexnord's subpoenas. (Nigh Decl. ¶ 16.) Rexnord's counsel sent the EEOC's counsel an e-mail granting the extension and stating the new deadline for the EEOC to file an objection would be April 12, 2012, two weeks after the March 29, 2012 phone call. (*Id.*) Counsel for the EEOC confirmed receipt of the e-mail on March 30, 2012. (*Id.* ¶ 17.) Counsel for the EEOC sent Rexnord's counsel a letter dated April 17, 2012, stating it would file its objection to the subpoenas on April 18, 2012 - fourteen days after the original response deadline of April 4, 2012. (*Id.* ¶ 18, Ex. 14.) The EEOC filed its motion to quash on April 18, 2012.

- 3 -

Sullivan was deposed on June 4, 2012. (Declaration of Amy Schmidt Jones ("Jones Decl.") ¶ 4, Docket # 27-2.) On June 21, 2012, Rexnord filed a motion for leave to file a sur-reply brief in opposition to the EEOC's motion to quash. (Docket # 27.) Rexnord filed its proposed sur-reply along with its motion for leave to file. (Docket # 27-1.) In its sur-reply, Rexnord argues that Sullivan testified at her deposition that she shredded all of her documentation related to the case before the beginning of the litigation; thus, Rexnord must obtain Sullivan's employment records from her employers. Rexnord further argues the EEOC has failed to produce requested medical records.

Over the EEOC's objection, this Court allowed the sur-reply and ordered the EEOC to respond. (Docket # 29 and # 30.) The EEOC responded on June 28, 2012, stating that it has produced medical records and continues to collect all of Sullivan's medical records. (Docket # 33 at 3.)

## DISCUSSION

### 1. *Timeliness of the EEOC's Motion to Quash*

As a preliminary matter, Rexnord argues the EEOC's motion to quash was not timely filed. The EEOC argues that Rexnord is "hardly in the position to complain about timeliness" as its response brief was untimely filed on May 14, 2012. Rexnord argues that to meet the requirement of a "timely motion" under Fed. R. Civ. P. 45(c)(3), the motion to quash must be made at or before the time of compliance set forth in the subpoena, citing *Cent. States v. GWT 2005 Inc.*, No. 06-CV-1205, 2009 US Dist LEXIS 92917, *3-4 (N.D. Ill. Oct. 6, 2009). The court in *Cent. States* acknowledges that "neither Rule 45(c)(3) nor the Advisory Committee's Notes define what constitutes a 'timely' motion," however, "this court has held that a motion to quash must be made at or before the time of compliance." *Id.* at *4.

The parties do not cite, and this Court has not found, any Seventh Circuit law defining a "timely" motion under Rule 45(c)(3). However, "[i]n general[,] courts have read 'timely' to mean within the time set in the subpoena for compliance." *Advanced Portfolio Technologies, Inc. v. Stroyny*, No. 06-MISC-065, 2006 WL 3761330, *2 (E.D. Wis. Dec. 18, 2006). In *Strogyny*, the subpoena demanded production of documents by April 14, 2006 and the motion to quash was made on November 1, 2006. The court found that "[u]nder no stretch of the imagination is a motion made over 6 months after the time set in the subpoena for compliance 'timely.'" *Id.*

Here, it appears that the parties were operating under the assumption that the motion to quash should be filed on or before April 4, 2012, the date of compliance. It also appears the parties experienced a miscommunication regarding whether the two week extension began from the date of the March 29, 2012 telephone conference or from the April 4, 2012 date of compliance. Although Rexnord articulated its belief that the deadline was April 12, 2012 and the EEOC did not dispute this immediately, the EEOC did dispute its understanding of the deadline in its letter dated April 17, 2012. (del Peral Decl., Exs. R, S, U.)

Unlike the six month delay in *Stroyny*, the EEOC's delay in filing its motion to quash amounts to less than a week, assuming a April 12, 2012 deadline. It is unclear how this less than one week delay between April 12 and April 18 has adversely affected either party. Accordingly, the motion will not be denied on this ground.[2]

---

[2] Further, the EEOC is incorrect that Rexnord's response brief is untimely filed. Pursuant to Fed. R. Civ. P. 5(b)(2)(E), 5(b)(3) and 6(d), if service is made using the court's electronic transmission facilities, three days are added after the period would otherwise expire under Rule 6(a). Thus, Rexnord's brief was timely.

### *2. Notice Under Fed. R. Civ. P. 45(b)(1)*

The EEOC argues the subpoenas should be quashed because Rexnord failed to provide adequate notice under Fed. R. Civ. P. 45(b)(1). Rule 45(b)(1) requires that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party." While the Rule does not state how much notice is required, the 1991 Advisory Committee Notes to Rule 45 indicates that the purpose of the notice requirement is to provide opposing parties an opportunity to object to the subpoena. *See Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163, 1173 (10th Cir. 2003).

The parties do not cite, and this Court has not found, any Seventh Circuit authority addressing the proper amount of notice to be given under Rule 45(b)(1). However, given the purpose of the Rule is to provide the opposing party an opportunity to object to the subpoena, the purpose of the Rule in this case has been served. The subpoenas were provided to the EEOC two weeks prior to the date of compliance, during which time the EEOC voiced its objections to the subpoenas, received an extension of time to file from Rexnord, and filed a motion to quash. Because the EEOC had an opportunity to object before compliance with the subpoenas, the motion will not be denied on this ground.

### *3. The EEOC's Standing to Bring Motion to Quash*

Rexnord contests the EEOC's standing to bring a motion to quash the subpoenas under Rule 45(c)(3)(A). Rule 45(c)(3)(A) provides that a court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts

business in person; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

As the EEOC has noted, the Seventh Circuit has not weighed in on the issue of the EEOC's standing to quash subpoenas served on non-parties. Although a criminal matter, in *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982), the Seventh Circuit found that a "party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."

Regarding standing to quash subpoenas, courts in this district have found that a "motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Teed v. JT Packard & Associates, Inc.*, No. 10-MISC-23, 2010 WL 2925902, *2 (E.D. Wis. July 20, 2010); *see also DeMarco v. Chomas, et al.*, No. 08-CV-143, 2008 WL 4693541, *3 (E.D. Wis. Oct. 23, 2008) ("Outside of the context of a party claiming attorney-client privilege or some other personal right, only persons to whom subpoenas are directed have standing to challenge their validity through a motion to quash.").

Other district courts have ruled similarly in cases involving the EEOC's standing to quash subpoenas. *See EEOC v. Original Honeybaked Ham Co.*, No. 11–cv–02560, 2012 WL 934312, *2 (D. Colo. Mar. 19, 2012) ("In this district, a party has no standing to quash a subpoena served on a third party, except as to claims of privilege or upon a showing that a privacy issue is implicated."); *EEOC v. Michael Cetta, Inc.*, No. 09 Civ. 10601, 2011 WL 5117020, *2 (S.D.N.Y. Oct. 27, 2011) ("Generally, a party lacks standing to challenge a subpoena served on a third party, except as to claims of privilege or a proprietary interest in the subpoenaed matter."); *EEOC v. United Galaxy*, No.

10-4987, 2011 WL 4072039, *2 (D.N.J. Sept. 13, 2011) (finding that the EEOC does not have standing to quash a subpoena served on a non-party "unless the party seeking to challenge a subpoena claims a personal right or privilege regarding information sought by the subpoena"); *EEOC v. Premier Well Services, LLC*, No. 4:10cv1419, 2011 WL 2198285, at *1 (E.D. Ark. June 3, 2011) (citing *Cofeyville Resources Refining & Marketing, LLC v. Liberty Surplus Ins. Corp.*, No. 4:08MC00017, 2008 WL 4853620 (E.D. Ark. Nov. 6, 2008)) ("[O]rdinarily a party does not have standing to quash a subpoena served on a non-party unless the party seeking to challenge a subpoena claims a personal right or privilege regarding information sought by the subpoena.").

In this case, the EEOC argues it has standing to challenge the non-party subpoenas because the subpoenas involve the personal rights and privileges of Sullivan and of the EEOC on Sullivan's behalf. (Docket # 14 at 3.) Specifically, the EEOC asserts that Sullivan has a general privacy interest in her employment records, particularly in her disciplinary records and in her pre and post-employment physicals. (*Id*; Pl.'s Reply Br. at 4, Docket # 26.) The EEOC further argues the subpoenas will serve to intimidate Sullivan by revealing that she is disabled. (Docket # 14 at 4.)

Rexnord counters that the EEOC waived any privacy interest Sullivan may have had in her medical records by asserting a claim of disability discrimination based on migraines and a perceived seizure disorder. (Docket # 17 at 9.) Rexnord further argues the EEOC placed Sullivan's subsequent employment at issue and thus waived any privacy interest in disciplines and terminations by claiming Sullivan is a qualified individual with a disability, by denying Rexnord's direct threat defense, and by seeking make whole relief, including back pay and lost benefits. (*Id.* at 10.)

The Court agrees that Sullivan generally has a privacy right in her employment records from her employers subsequent to Rexnord. *See Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994)

(finding that there is a privacy interest in personnel files); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) ("Plaintiff has a legitimate privacy interest in information regarding his subsequent employment and therefore has standing to bring the instant motion."); *EEOC V. Princeton Healthcare System*, No. 10–4126, 2012 WL 1623870, *24 (D.N.J. May 9, 2012). While the law is unclear on the issue of whether the EEOC has standing to challenge the subpoenas, Rexnord does not argue that Sullivan has no privacy interest in her employment records. Rather, Rexnord contends that the EEOC has waived this privacy interest by bringing the lawsuit on Sullivan's behalf. As such, in light of the EEOC's statutory authority to bring an action on Sullivan's behalf and thus protect Sullivan's privacy interests, the Court will err on the side of the EEOC's standing to bring this motion to quash and will not dismiss the motion on this ground.

### *4. Relevancy of Materials Sought by Subpoenas*

Next, the Court must determine whether the subpoenas seek discoverable information. The EEOC challenges the relevancy of the documents Rexnord requests with the subpoenas. The subpoenas request information from four employers with which Sullivan was employed subsequent to her termination with Rexnord and from one employer to which Sullivan applied after her termination with Rexnord. The scope of discovery obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. *Teed*, 2010 WL 2925902, at *1. Fed. R. Civ. P. 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Despite the general breadth of discovery, the court may limit discovery where the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less

expensive, or the burden or expense of the proposed discovery outweighs its likely benefits. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) & (iii). The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. *Teed*, 2010 WL 2925902, at *2.

The subpoenas first request very broad groups of documents, such as "any electronic records or logs relating to the employment or application for employment of Danielle M. Sullivan" and "the complete contents of any personnel, supervisor, payroll, benefits, or medical file." The Court will quash the subpoena as to these very broad requests. However, the subpoenas also request from each subsequent employer five specific categories of information regarding Sullivan that fit into these very broad categories. The Court will address each specific category in turn.

> i. Any application for employment, interview notes, employment offer, correspondence, and resume.

Rexnord argues the above documents are relevant because the EEOC is seeking damages for "relocation" and "job search expenses" and because Sullivan claims she has sought employment "with many potential employers." (Docket # 17 at 14.) Further, Rexnord argues these documents are relevant to its defense that Sullivan failed to mitigate her damages. Rexnord states that it "has the right to vet whether Sullivan actually applied for and acted diligently to remain employed by the limited employers that she has identified in discovery." (*Id.* at 15.) Lastly, Rexnord argues that prospective employers often ask an applicant about her employment history, including why she left her previous place of employment. (*Id.*) Rexnord argues Sullivan's representations regarding why Rexnord fired her would support Rexnord's defense if Sullivan conceded Rexnord had safety concerns regarding her continued employment, or will be probative of her credibility if she gave a false reason for leaving Rexnord. (*Id.*)

This Court agrees that whether Sullivan applied for employment after her termination with Rexnord is relevant to Rexnord's mitigation of damages defense. Rexnord is entitled to see Sullivan's applications for employment after her termination with Rexnord and any employment offers she received after her termination with Rexnord. This Court believes that Rexnord can and should first request these documents directly from Sullivan. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 255 (S.D. Ind. 2002) (finding it "less intrusive" to request employment application by serving a request for production of documents on the plaintiff, rather than requesting it from her current employer).

However, it appears the parties have been less than cooperative regarding production of these documents. Of note, Rexnord requested these documents from the EEOC in its First Set of Request for Production of Documents, (del Peral Decl., Ex. F at 8-9), however, Rexnord claims the EEOC has failed to produce these documents. (Docket # 17 at 15.) In its sur-reply, Rexnord states that Sullivan testified at her deposition that she either shredded or lost all of her documentation related to this case. (Docket # 31 at 2.) While it is unclear from the portion of the deposition transcript attached as an exhibit to Rexnord's sur-reply exactly which documents Sullivan either shredded or lost, the EEOC does not counter Rexnord's assertion that Sullivan does not have these documents. Thus, because the EEOC is unable to produce Sullivan's employment applications and employment offers, the Court will deny the motion to quash as to these documents.

Further, the Court finds the interview notes from these subsequent employers are relevant and discoverable. Rexnord contends that these documents are relevant to Sullivan's credibility in that it may show Sullivan either lied to subsequent employers regarding her reason for leaving Rexnord, or confirm Rexnord had safety concerns regarding Sullivan. The EEOC argues that Rexnord is seeking sweeping information in the hopes of "proving Sullivan is a liar" and states that if such

- 11 -

evidence exists, "it would be inadmissible for the purpose of attacking a witness' character for untruthfulness." (Docket # 26 at 7.) While the Court agrees that the information, if it exists, may be inadmissible pursuant to Fed. R. Evid. 608(b), *see Hollins v. City of Milwaukee* 574 F.3d 822, 828 (7th Cir. 2009) (finding that specific instances of misconduct of a witness intended for the purposes of attacking or supporting the witness' character for truthfulness may not be proved by extrinsic evidence), the interview notes are relevant to Rexnord's direct threat defense in that it could show Sullivan presented a "direct threat" to her own health and safety or that of others. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78-79 (2002). As previously stated, relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Thus, the Court will allow the subpoena as to the interview notes.

Sullivan's resume, to the extent it lists her places of employment after her termination with Rexnord, is relevant information. Although it is likely repetitive of information obtained either from Sullivan's deposition or from the EEOC's discovery responses, Sullivan's resume is discoverable. Thus, the subpoena is granted as to Sullivan's resume.

Lastly, it is unclear how the general category of "correspondences" is relevant to any party's claim or defense. Thus, the Court quashes the portion of the subpoenas requesting correspondence. Accordingly, the Court denies the motion to quash the subpoenas with respect to applications for employment and employment offers, interview notes, and resumes and grants the motion to quash with respect to the correspondences.

    ii.  Full payroll history and employee benefits information.

The EEOC acknowledges that Sullivan's payroll history and employee benefits information is relevant to Rexnord's mitigation of damages defense. (Docket # 14 at 9.) Further, the EEOC

previously did not dispute this portion of the subpoena. (del Peral Decl., Ex. U.) In its April 17, 2012 letter to Rexnord, the EEOC stated that the "EEOC offered to withdraw its objections if the subpoenas were narrowed to include pay and benefit information only." (*Id.*) The EEOC has also indicated that it has produced W-2s and relevant tax information to show Sullivan's earnings after she was terminated. (Docket # 26 at 7.) Again, while Sullivan's salary history after her termination with Rexnord is relevant to Rexnord's mitigation of damages defense, this information can be obtained through Sullivan. *See Graham*, 206 F.R.D. at 255-56. Looking at Rexnord's First Set of Interrogatories and First Set of Request for Production of Documents and the EEOC's responses, Rexnord has requested Sullivan's W-2s and other income information and the EEOC agreed to produce them in April. (del Peral Decl., Ex. D at 8-9; Ex. F. at 9-10.) Thus, to the extent these documents have not been produced, the EEOC must timely produce them.

Regarding the employee benefits information, it appears this too has been requested from the EEOC through Rexnord's discovery requests. (del Peral Decl., Ex. D at 6, 10; Ex. F at 10.) Rexnord has argued that the EEOC has not provided this information. (Docket # 17 at 14.) Thus, the Court will quash the portion of the subpoena requesting full payroll history and employee benefits information. However, the Court urges the parties to work cooperatively in producing this relevant information. Should the EEOC not produce these documents, either because it refuses or does not have access to them, the Court would reconsider permitting a non-party request for these documents.

        iii.      Disciplinary records, supervisor or investigatory notes, internal or external complaints or grievances, resignation letters, and letters of termination.

Rexnord argues documents concerning Sullivan's disciplines and terminations are relevant to the issue of whether Sullivan is a qualified individual with a disability, Rexnord's direct threat defense, and the EEOC's claim for make whole relief, including back pay and lost benefits. (Docket

# 17 at 10.) Further, Rexnord argues these documents are relevant to whether Sullivan had the same difficulties at subsequent employers that she did at Rexnord, including on the job blackouts and repeated absences. (*Id.* at 11.)

A "qualified individual with a disability" under the ADA is someone who (1) satisfies the requisite skill, experience, education, and other job-related requirements of her employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation. *Budde v. Kane County Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010). Under the ADA, an individual is not qualified if she presents a "direct threat" to her own health and safety or that of others. *Chevron*, 536 U.S. at 78-79.

It is not entirely clear to the Court how Sullivan's disciplinary or termination records tend to show that Sullivan is a qualified individual with a disability. Nor is it clear how these records, from subsequent employers, are relevant to Rexnord's direct threat defense. While Sullivan's disciplinary records at Rexnord would tend to show whether Sullivan was a qualified individual, it is unclear how these records from subsequent employers would show Sullivan was a qualified individual. Rather, it appears Rexnord is attempting to use the disciplinary records from subsequent employers to show Sullivan had issues with her employment after leaving Rexnord. The Court is not persuaded that this demonstrates Sullivan was disabled or perceived to be disabled while at Rexnord. Thus, the Court will quash this portion of the subpoenas.

> iv. Medical records, employee leave information, and documents relating to any preemployment or post-employment physical.

Rexnord argues Sullivan's medical records are relevant to whether Sullivan had an actual or perceived disability, which Rexnord disputes, to the EEOC's claim for make whole relief, to

- 14 -

Rexnord's direct threat defense, and to Rexnord's after-acquired evidence defense.[3] (Docket # 17 at 15-16.) The EEOC argues that it has provided Rexnord with 250 pages of medical records dating back to 2006 and is continuing to produce medical records. (Docket # 26 at 9.) The EEOC further argues that it has informed Rexnord of the identities of Sullivan's treating physicians and Rexnord has failed to depose those treating physicians. (*Id.*) While the Court agrees with Rexnord that in a claim under the ADA, Sullivan's medical records are indeed relevant, the Court is not convinced the correct source of this information is from Sullivan's subsequent employers. In the three cases cited by Rexnord, *Richmond-Jeffers v. Porter Twp. Sch. Corp.*, Case No. 2:08 cv 278, 2010 U.S. Dist. LEXIS 124239, at *7 (N.D. Ind. Nov. 19, 2010), *Wynne v. Loyola University of Chicago*, File No. 97 C 06417, 1999 U.S. Dist. LEXIS 14723, at *3 (N.D. Ill. Aug. 30, 1999), and *Butler v. Burroughs Wellcome, Inc.*, 920 F. Supp. 90, 9 AD Cases 3, 4 (E.D.N.C. Feb. 13, 1996), while the court found the medical records relevant to the ADA claim, the documents in each case were being sought from the plaintiff's medical provider, not from an employer.

The Court finds that the medical records requested by Rexnord in its interrogatories three and six (del Peral Decl., Ex. D at 4, 6), are relevant and discoverable; however, Rexnord must seek these documents through a less intrusive means, namely through Sullivan's medical providers. *See Graham*, 206 F.R.D. at 254.

---

[3] Under the after-acquired evidence defense, an employee's misconduct may limit her recovery of damages. As the Seventh Circuit has explained: "[a]n employer may be found liable for employment discrimination, but if the employer later—typically in discovery—turns up evidence of employee wrongdoing which would have led to the employee's discharge, then the employee's right to back pay is limited to the period before the discovery of this after-acquired evidence."

*Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047 (7th Cir.1999) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361 (1995)).

Overall, this issue seems to again indicate a lack of cooperation between the parties. Rexnord has requested medical releases, (del Peral Decl., Ex. F at 10), to which the EEOC has objected as exceeding the scope of Fed. R. Civ. P. 34. However, Rexnord indicated that the EEOC provided medical authorizations to various providers on May 4, 2012. (Nigh Decl. ¶ 20.) The authorizations ask the providers to provide documents by May 15, 2012. (Docket # 22-15.) The EEOC has stated that it has produced medical records as it has received them. (Docket # 26 at 10.) Rexnord further argues the EEOC has not produced medical records relating to Sullivan's trips to the emergency room for seizures or migraines. (Docket # 31 at 6.) The EEOC argues that it has produced these records. (Docket # 33 at 3.)

Clearly there is some miscommunication between the parties as to which documents have been produced and the speed of production. The request to the medical providers for records asked for compliance by May 15, 2012, over a month ago. To the extent the EEOC has failed to provide Rexnord with medical records responsive to these requests (del Peral Decl., Ex. F at 10), the EEOC is required to produce the documents with all due haste. If the reason certain documents have not been produced has been because of slowness on the providers' part, the EEOC must provide Rexnord with an update as to the status of these requests. Thus, to the extent the subpoenas request general medical records from the employers, this portion of the subpoena is quashed.

Regarding pre and post-employment physicals, in the EEOC's discovery responses, the EEOC stated that subsequent employer Cooper Power Systems required Sullivan to undergo a physical. (del Peral Decl., Ex. D at 7.) The EEOC indicated that Aerotek and Nissen did not ask Sullivan to undergo a physical. (*Id.*) Rexnord has indicated that Site Staffing, Inc., an employer to which Sullivan applied but was not hired, informed Rexnord that it had no records relating to Sullivan. (Nigh Decl. ¶ 13.) As medical records from employment-related physicals are presumably

unavailable from Sullivan's medical providers, these documents are discoverable from the subsequent employers. Thus, the Court will deny the motion to quash the subpoenas as to pre and post-employment physicals. Cooper Power Systems should provide any documents in its possession regarding employment-related physicals as should David J. Frank Landscape Contracting, Inc., if it has any in its possession.

The Court also finds that documents related to Sullivan's employee leave are relevant to her ADA claim; however, whether Sullivan took leave due to an alleged disability while with these employers is obtainable through Sullivan. Thus, this portion of the subpoenas is quashed. To repeat, if the EEOC refuses to provide this information or does not have access to it, the Court would reconsider permitting a non-party request for these documents.

As such, the portion of the subpoenas requesting medical records and employee leave information is quashed. However, the EEOC is ordered to produce medical records and releases responsive to Document Request No. 23 and to provide Rexnord with information regarding whether Sullivan took leave while with her subsequent employers. The motion to quash the portion of the subpoenas requesting documents associated with pre and post-employment physicals is denied.

> v. Any employee handbook, summary of employee benefits, or summary plan descriptions that were in effect during Sullivan's employment or application for employment with your organization.

Neither party address whether these documents should or should not be produced, presumably because the information requested does not implicate information specific or personal to Sullivan. Because the plaintiff has not objected to the production of these documents, the motion to quash the subpoenas as to these documents will be denied.

### 5. *Protective Order*

The EEOC has also requested a protective order against any future subpoenas, requiring Rexnord provide notice of the future subpoenas, along with the subpoenas themselves, ten business days before serving them. (Docket # 14 at 9-10.) Specifically, the EEOC seeks to prevent Rexnord from subpoenaing Sullivan's current employer. (*Id.* at 10.) Fed. R. Civ. P. 26(c) governs the issuance of discovery-related protective orders and permits parties to move for protective orders for "good cause shown." The EEOC has not shown "good cause" either for issuing a protective order against the subpoenaing of Sullivan's current employer or for requiring ten days notice prior to the service of any future subpoenas. Assuming Rexnord would serve subpoenas similar to the ones served on Sullivan's subsequent employers, the subpoenas should comply with this Order. However, the Court will not issue a protective order against all future subpoenas without having determined whether they seek relevant and discoverable evidence.

Regarding the ten day notice the EEOC is requesting prior to service of the subpoenas, as this Court previously stated, Rule 45 does not dictate how long before service notice must be given. Given the EEOC's ability to object to the subpoenas, confer with Rexnord's counsel, and file its motion to quash within the time set for complying with the subpoenas (including the extension given by Rexnord), the Court finds the ten day prior notice unnecessary. Thus, the EEOC's motion for a protective order is denied.

Finally, regarding the issue of subpoenaing Sullivan's current employer, the parties are urged to work cooperatively in producing relevant discovery from this employer. Rexnord indicates that it has made efforts to minimize awareness of any request for information from Sullivan's current employer and the EEOC has not responded to its offer. (Docket # 17 at 21.) The parties are encouraged to attempt to work out a suitable agreement regarding this employer.

Finally, the parties have submitted a stipulation to extend deadlines for expert witness disclosure. (Docket # 32.) The Court finds that it is necessary to conduct an in-person status conference in this matter to address this stipulation and the status of production of discovery. As such, the Court will conduct an in-person status conference at a date and time to be determined.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion to quash non-party subpoenas is hereby **GRANTED IN PART AND DENIED IN PART**. The plaintiff's motion for a protective order is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Court will hold an in-person status conference on a date and time to be determined.

Dated at Milwaukee, Wisconsin this 29th day of June, 2012.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge