# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

    v.                                             Case No. 11-CV-777

REXNORD INDUSTRIES, LLC,

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF PLAINTIFF'S EXPERT WITNESS

Before the court is the defendant's motion *in limine* (Docket # 96) requesting an order excluding the expert report and related testimony of the plaintiff's expert witness, George Morris, M.D. For the reasons set forth below, the defendant's motion *in limine* is denied.

## BACKGROUND

The underlying facts of this case are detailed in this Court's decision and order in which defendant's motion for summary judgement was denied. (Docket # 107.) For background purposes here, this is an action under the Americans with Disabilities Act ("ADA"). The ADA prohibits an employer from discriminating against a qualified individual with a disability. *See* 42 U.S.C. § 12112(a); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669 (7th Cir. 2000). An individual is not qualified if she presents a "direct threat" to her own health and safety or that of others. *See Bekker*, 229 F.3d at 670. The pertinent regulatory provision provides that a:

> Direct threat means a significant risk of substantial harm to the health or safety of the
> individual or others that cannot be eliminated or reduced by reasonable accommoda-

> tion. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include: (1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm.

29 C.F.R. § 1630.2(r). In this case, in terminating Sullivan, Rexnord relied on the report of Dr. Andrew Seter who concluded Sullivan had an active seizure disorder. (Defendant's Proposed Findings of Fact ¶ 96.) Rexnord asserts that by relying on the fitness for duty report of Dr. Seter, it based its assessment that Sullivan was a direct threat on a reasonable medical judgment that relied on the most current medical knowledge and/or best available objective evidence. To counter Rexnord's position, the EEOC seeks to present evidence from its expert, Dr. George Morris, who opines that Dr. Seter relied on improper methodology in diagnosing Sullivan's condition. (Dr. Morris Expert Report, Nigh Decl. ¶ 4, Ex. C, Docket # 95-3.)

In this motion, Rexnord seeks to prohibit the EEOC from introducing Dr. Morris' opinion. The defendant argues Dr. Morris' opinion consists of express, inadmissible speculation; lacks foundation in reliable methodology or evidence; lacks reliability; and will not assist the trier of fact. Specifically, regarding Dr. Morris' ability to opine on the objective reasonableness of Rexnord's reliance on Dr. Seter's evaluation, the defendant argues that Dr. Morris, as a doctor specializing in epilepsy, has no training in occupational medicine and thus cannot render an opinion on the reasonableness of Rexnord's reliance on Dr. Seter's evaluation of Sullivan as a direct threat. The defendant argues the "ADA is not a medical malpractice statute" and the case is not about the standard of care of epileptologists in diagnosing seizure disorders. (Def.'s Br. at 12, Docket # 97.)

**DISCUSSION**

The parties agree that the "core issue" in this case is whether Rexnord made an objectively reasonable decision that Sullivan presented a direct threat to safety in its workplace as a result of her health condition. (Def.'s Br. at 1, Docket # 97.) The determination that an employee poses a direct threat must be premised upon "a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence . . . ." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (citing 29 C.F.R. § 1630.2(r) (internal quotations omitted)). The parties disagree on whether Dr. Seter's evaluation relied on the most current medical knowledge and/or on the best available objective evidence and in turn whether it was objectively reasonable for Rexnord to rely on Dr. Seter's evaluation in determining Sullivan was a direct threat. Thus, the question before the Court is whether Dr. Morris' opinion constitutes expert testimony which would assist the jury on the question of whether Rexnord had the most current medical knowledge and/or the best available objective evidence in making its direct threat determination.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Ervin v. Johnson & Johnson, Inc.* 492 F.3d 901, 904 (7th Cir. 2007). Under this framework, courts determine whether the expert testimony is both relevant and reliable. *Id.* It is a three-step analysis: the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert*, 509 U.S. at 592-93; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. In determining reliability, *Daubert* also sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory

has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94. It is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

Applying these standards, Dr. Morris' expert testimony is proper to review the objective reasonableness of the opinion upon which the defendant relied. First, Dr. Morris is qualified based on his training, experience, and education to render an opinion as to Dr. Seter's methodology in diagnosing Sullivan with an active seizure disorder and as to whether Dr. Seter relied on the most current medical knowledge and/or the best available objective evidence in determining Sullivan was a direct threat. Dr. Morris, as an epileptologist, specializes in the treatment and management of epilepsy. (Deposition of Dr. George L. Morris ("Morris Dep") at 8-9; del Peral Decl., Ex. K, Docket #100-11.) Dr. Morris is a board certified neurologist with twenty-four years experience who has spent the last twelve years exclusively treating individuals with seizures and epilepsy. (Dr. Morris Expert Report, Nigh Decl. ¶ 4, Ex. C, Docket # 95-3.)

Second, the reasoning and methodology underlying Dr. Morris' testimony is scientifically reliable. In producing his expert report, Dr. Morris reviewed Sullivan's medical records; Dr. Seter's fitness for duty report; and the deposition transcripts of Dr. Robert Goldman, Dr. Adine Rodemeyer, Dr. Seter, Dr. Terry Spears-Barnett, and Sullivan. (Appendix B to Morris Expert Report.) Dr. Morris testified as to the methodology utilized by physicians in his field to diagnose seizure disorders,
- 4 -

specifically differential diagnosis.[1] (Morris Dep. at 67.) In his expert report, Dr. Morris states that unlike some medical conditions in which a negative diagnostic test can exclude a disease, seizures and epilepsy do not function that way. (Morris Expert Report at 2.) Rather, Dr. Morris states that "[o]nly with a thorough consideration of the differential diagnoses, those possibilities that may also be a potential diagnosis, can clear determination as to the patient's workplace fitness be made." (*Id.*) A differential diagnosis satisfies a *Daubert* analysis if the expert uses reliable methods. *Ervin*, 492 F.3d at 904. Dr. Morris lays out many different potential diagnoses that meet Sullivan's symptoms. Given Dr. Seter's failure to utilize this method of diagnosis, Dr. Morris opines that Dr. Seter's fitness for duty report was inadequate and incorrect in diagnosing Sullivan's condition. (Morris Expert Report at 1-2.) Further, Dr. Morris opined that proper diagnosis would include review of medical records (Morris Dep. at 57, del Peral Decl. ¶ 20, Ex. S, Docket # 87-6), obtaining a clear historical description of the patient's events, and eliciting a clear history regarding treatment intervention (Morris Expert Report at 2). Dr. Morris' opinion relies on a scientifically sound methodology and will not be excluded on that basis.

Finally, Dr. Morris' testimony will assist the jury in understanding the evidence and in determining the objective reasonableness of Rexnord's reliance on Dr. Seter's evaluation. While Rexnord is correct that this is not a medical malpractice case, and that Dr. Morris is not an occupational specialist, the applicable regulations and interpretive caselaw require the evaluation of professional opinions upon which the employer relied. *See Bragdon v. Abbott*, 524 U.S. 624, 650 (1998) (finding that whether an employer's employment decision was reasonable in light of available

---

[1] Differential diagnosis is defined as "the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings." Stedman's Medical Dictionary, Diagnosis (27th ed. 2000).

medical evidence requires that courts "assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments. . ."). As the plaintiff concedes, Dr. Morris is not offering an opinion as to Sullivan's proper diagnosis. (Pl.'s Br. at 16, Docket # 99.) Rather, Dr. Morris opines on Dr. Seter's methodology for diagnosing Sullivan with an active seizure disorder, an opinion relied upon by Rexnord in terminating Sullivan's employment. Dr. Morris' testimony will assist the jury in determining whether Dr. Seter's evaluation relied on the most current medical knowledge and/or the best available objective evidence and it turn whether it was objectively reasonable for Rexnord to rely on Dr. Seter's evaluation in determining Sullivan was a direct threat. Of course, the defendant can refute the plaintiff's expert opinions, as the Federal Rules of Evidence allow, and the jury will decide what weight, if any, to give to Dr. Morris' opinion. Most significantly, ultimately, it is the function of the jury to decide the core issue: whether Rexnord made an objectively reasonable decision that Sullivan presented a direct threat to safety in its workplace as a result of her health condition.

## CONCLUSION

Dr. Morris' expert report and related testimony meets the standard of admissibility articulated in Fed. R. Evid. 702 and *Daubert*. Dr. Morris is qualified as an expert, his opinion is reliable, and his testimony will assist the jury in determining whether it was objectively reasonable for Rexnord to rely on Dr. Seter's evaluation in determining Sullivan was a direct threat. For these reasons, defendant's motion *in limine* is denied.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion *in limine* (Docket # 96) is **DENIED**.

Dated at Milwaukee, Wisconsin this 30th day of August, 2013.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge